FILED
October 29, 2021
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY: _____ JU
                        DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **JAMES ARTIE SHAW,** § | | |
| **TDCJ No. 02152891,** § | | |
| § | | |
| Petitioner, § | | |
| § | | |
| v. § | | Civil No. SA-20-CA-0918-OLG |
| § | | |
| **BOBBY LUMPKIN, Director,** § | | |
| **Texas Department of Criminal Justice,** § | | |
| **Correctional Institutions Division,** § | | |
| § | | |
| Respondent. § | | |

## MEMORANDUM OPINION AND ORDER

Before the Court are Petitioner James Artie Shaw's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 and supplemental memorandum in support (ECF No. 1), as well as Respondent Bobby Lumpkin's Answer (ECF No. 11) thereto. Having reviewed the record and pleadings submitted by both parties, the Court concludes Petitioner is not entitled to relief under the standards prescribed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). *See* 28 U.S.C. § 2254(d). Petitioner is also denied a certificate of appealability.

### I. Background

In August 2017, a Bexar County jury found Petitioner guilty of one count of super aggravated sexual assault of a child and one count of indecency with a child (repeater). *State v. Shaw*, No. 2016CR8585 (399th Dist. Ct., Bexar Cnty., Tex. Aug. 10, 2017); (ECF No. 16-1 at 111-14). Following a separate punishment hearing, the jury sentenced Petitioner to twenty-five years of imprisonment on the first count and thirty years of imprisonment on the second count, with the sentences to run concurrently. *Id*.

The Texas Fourth Court of Appeals affirmed Petitioner's convictions in an unpublished opinion on direct appeal. *Shaw v. State*, No. 04-17-00535-CR (Tex. App.─San Antonio, May 30, 2018, pet. ref'd); (ECF No. 14-3). The Texas Court of Criminal Appeals then refused his petition for discretionary review on October 24, 2018. *Shaw v. State*, No. 0746-18 (Tex. Crim. App.); (ECF No. 14-13). Thereafter, Petitioner challenged the constitutionality of his convictions by filing an application for state habeas corpus relief. *Ex parte Shaw*, No. 90,222-02 (Tex. Crim. App.); (ECF No. 14-31 at 4-42). Based on the findings of the state habeas trial court, however, the Texas Court of Criminal Appeals eventually denied the application without written order on October 30, 2019. (ECF No. 14-25).

Petitioner initiated the instant proceedings by filing a petition for federal habeas relief on July 30, 2020. (ECF No. 1 at 10). In the petition and supplemental memorandum filed with it, Petitioner raises the same allegations that were rejected by the Texas Court of Criminal Appeals during his state habeas proceedings: (1) the prosecution committed misconduct by misstating the law during closing arguments, (2) his trial counsel rendered ineffective assistance by failing to object to the prosecution's misstatement of the law during closing, and (3) trial counsel rendered ineffective assistance by failing to investigate and present witnesses on his behalf.

## II. Standard of Review

Petitioner's federal habeas petition is governed by the heightened standard of review provided by the AEDPA. 28 U.S.C.A. § 2254. Under § 2254(d), a petitioner may not obtain federal habeas corpus relief on any claim that was adjudicated on the merits in state court proceedings unless the adjudication of that claim either: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or (2) resulted in a decision that was

based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *Brown v. Payton*, 544 U.S. 133, 141 (2005). This intentionally difficult standard stops just short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. *Harrington v. Richter*, 562 U.S. 86, 102 (2011) (citing *Felker v. Turpin*, 518 U.S. 651, 664 (1996)).

A federal habeas court's inquiry into unreasonableness should always be objective rather than subjective, with a focus on whether the state court's application of clearly established federal law was "objectively unreasonable" and not whether it was incorrect or erroneous. *McDaniel v. Brown*, 558 U.S. 120 (2010); *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003). Even a strong case for relief does not mean the state court's contrary conclusion was unreasonable, regardless of whether the federal habeas court would have reached a different conclusion itself. *Richter*, 562 U.S. at 102. Instead, a petitioner must show that the decision was objectively unreasonable, which is a "substantially higher threshold." *Schriro v. Landrigan,* 550 U.S. 465, 473 (2007); *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003).

So long as "fairminded jurists could disagree" on the correctness of the state court's decision, a state court's determination that a claim lacks merit precludes federal habeas relief. *Richter*, 562 U.S. at 101 (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). In other words, to obtain federal habeas relief on a claim previously adjudicated on the merits in state court, Petitioner must show that the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. at 103; *see also Bobby v. Dixon*, 565 U.S. 23, 24 (2011).

### III. Merits Analysis

A.     **Prosecutorial Misconduct** (Claim 1).

In his first allegation, Petitioner contends the prosecutor committed misconduct during closing argument by misstating the law regarding the State's burden of proof which denied him the right to a fair trial and due process. According to Petitioner, the State's argument to the jury that "the only thing that is legally required is you believe [the crime] happened before September 13th, 2016" is false because the victim turned six years old on November 24, 2014, and the State must prove the victim was less than six years old. This allegation was raised and rejected during petitioner's state habeas proceedings. As discussed below, Petitioner fails to demonstrate that the state court's rejection of the claim was either contrary, or an unreasonable application of, clearly established federal law.

Allegations of prosecutorial misconduct are analyzed in two steps. *Trottie v. Stephens*, 720 F.3d 231, 253 (5th Cir. 2013) (citation omitted). The first is to evaluate whether the prosecutor made an improper remark. *United States v. Fields,* 483 F.3d 313, 358 (5th Cir. 2007) (citation omitted). If so, the second step is to determine whether the defendant suffered prejudice. *Id*. This second inquiry sets a high bar: "Improper prosecutorial comments constitute reversible error only where the defendant's right to a fair trial is substantially affected." *United States v. Ebron,* 683 F.3d 105, 140 (5th Cir. 2012) (quoting *United States v. Holmes,* 406 F.3d 337, 355-56 (5th Cir. 2005)). A criminal conviction should not be "lightly overturned on the basis of a prosecutor's comments standing alone," but rather only when "the prosecutor's remarks cast serious doubt on the correctness of the jury's verdict." *Id*. Thus, in deciding whether serious doubt infected the verdict, the Court considers three factors: "(1) the magnitude of the prejudicial effect of the prosecutor's remarks, (2) the efficacy of any cautionary instruction

by the judge, and (3) the strength of the evidence supporting the conviction." *Id*. (quoting *United States v. Mares,* 402 F.3d 511, 515 (5th Cir. 2005)) (internal quotation marks omitted).

There was nothing improper about the prosecutor's argument in this case.  On September 13, 2016, Petitioner was charged by indictment with one count of super aggravated sexual assault of a child and one count of indecency with a child by contact.  (ECF No. 16-1 at 6).  Regarding the first count, the indictment charged:

> on or about the 1st day of September, 2014, JAMES ARTIE SHAW, hereinafter referred to as defendant, did intentionally and knowingly cause the penetration of the MOUTH of [THE VICTIM], a child who was younger than 6 years, by THE DEFENDANT'S SEXUAL ORGAN.

*Id*.  Following a trial on the two charges, the prosecutor made the following statement during closing argument:

> I told you that we had to prove Count One.  And the Judge has told you and the charge says, the only thing that really has to be proved, you have to believe it happened before the presentment of the indictment.  We used a date or a time frame because we approximate, but the only thing that is legally required is you believe it happened before September 13th, 2016.

(ECF No. 16 at 392-93).  Petitioner contends this statement is false because the State must prove that the victim was younger than six years of age at the time the offense was committed and not by September 13, 2016, the day he was indicted for it.  As explained by Petitioner's trial counsel in his affidavit to the state habeas court, however, the prosecutor's statement was not objectionable because it was relevant to establishing the jurisdiction of the trial court and not the age of the victim.  This is so because there was conflicting testimony about when the victim, as well as Petitioner, left the state of Texas.  Thus, while perhaps inelegantly stated, the prosecutor's argument was not a misstatement of the law as Petitioner now suggests.

Furthermore, even if the argument was somehow an improper statement regarding the burden of proof, this Court finds nothing prejudicial about the prosecutor's remarks.  As noted

by the Texas Fourth Court of Appeals on direct appeal, the jury repeatedly heard testimony at trial that the victim was born on November 24, 2008, making her under the age of six at the time the offense alleged in count one was committed. Both the victim and the investigating officer testified that the sexual abuse occurred in San Antonio at "the pink house," and the evidence established that the family lived at the pink house from April 2014 to September 2014, well before the victim turned six on November 24, 2014. As such, the magnitude of the prejudicial effect of the prosecutor's remarks, if any, was slight compared to the strength of the evidence supporting the conviction. *Ebron,* 683 F.3d at 140. Habeas relief is therefore denied.

**B.     Trial Counsel's Representation (Claims 2, 3)**

Petitioner next alleges he was denied the right to effective assistance of counsel by his trial counsel's failure to (1) object to the misleading statement by the prosecution during closing argument, and (2) investigate and present witnesses on his behalf. Both allegations were raised during Petitioner's state habeas proceedings and rejected by the Texas Court of Criminal Appeals. As discussed below, Petitioner fails to demonstrate the state court's rejection of these allegations was either contrary to, or an unreasonable application of, Supreme Court precedent.

1.     The *Strickland* Standard

Sixth Amendment claims concerning the alleged ineffective assistance of trial counsel (IATC claims) are reviewed under the familiar two-prong test established in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, a petitioner cannot establish a violation of his Sixth Amendment right to counsel unless he demonstrates (1) counsel's performance was deficient and (2) this deficiency prejudiced his defense. 466 U.S. at 687-88, 690. According to the Supreme Court, "[s]urmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010).

When determining whether counsel performed deficiently, courts "must be highly deferential" to counsel's conduct, and a petitioner must show that counsel's performance fell beyond the bounds of prevailing objective professional standards.  *Strickland,* 466 U.S. at 687-89.  Counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  *Burt v. Titlow*, 571 U.S. 12, 22 (2013) (quoting *Strickland*, 466 U.S. at 690).  To demonstrate prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694.  Under this prong, the "likelihood of a different result must be substantial, not just conceivable."  *Richter*, 562 U.S. at 112.  A habeas petitioner has the burden of proving both prongs of the *Strickland* test.  *Wong v. Belmontes*, 558 U.S. 15, 27 (2009).

Finally, IATC claims are considered mixed questions of law and fact and are analyzed under the "unreasonable application" standard of 28 U.S.C. § 2254(d)(1).  *See Gregory v. Thaler*, 601 F.3d 347, 351 (5th Cir. 2010).  Where, as here, the state court adjudicated the IATC claims on the merits, a court must review a petitioner's claims under the "doubly deferential" standards of both *Strickland* and Section 2254(d).  *See Woods v. Etherton*, 136 S. Ct. 1149, 1151 (2016) (citing *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011)); *Knowles v. Mirzayance*, 556 U.S. 111, 112 (2009).  In such cases, the "pivotal question" is not "whether defense counsel's performance fell below *Strickland*'s standards," but whether "the state court's application of the *Strickland* standard was unreasonable."  *Richter*, 562 U.S at 101.  That is to say, the question to be asked in this case is not whether counsel's actions were reasonable, but whether "there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard."  *Id*. at 105.

2. <u>Counsel's Failure to Object</u> (Claim 2)

Petitioner contends trial counsel rendered ineffective assistance by failing to object to the prosecutor's misstatement of the law during closing argument. But as discussed in the previous section, the arguments raised by the prosecutor were neither improper nor did they "cast serious doubt on the correctness of the jury's verdict." *Ebron,* 683 F.3d at 140. For these reasons, Petitioner's trial counsel cannot reasonably be faulted for failing to raise what would amount to a futile objection to the prosecutor's argument. *See Miller v. Thaler*, 714 F.3d 897, 904 n.6 (5th Cir. 2013) (counsel is not required to make futile motions or objections); *Roberts v. Thaler*, 681 F.3d 597, 612 (5th Cir. 2012) ("the failure to lodge futile objections does not qualify as ineffective assistance") (quoting *Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990)); *Ward v. Dretke*, 420 F.3d 479, 498 (5th Cir. 2005) (counsel not ineffective for failing to lodge what would likely have been a futile objection).

Consequently, viewing this allegation under the deferential standard that applies on federal habeas review, Petitioner has not shown that the state court's rejection of this allegation was objectively unreasonable or that he is entitled to relief on his IATC claim.

3. <u>Counsel's Failure to Present Witnesses</u> (Claim 3)

During his state habeas proceedings, Petitioner alleged that his trial counsel, Leland Garrett McRae, was ineffective for failing to investigate and call certain witnesses, including his sister and mother, during the guilt/innocence phase of trial. According to Petitioner, these witnesses could have provided him an alibi showing that the offense in question could not have happened given the dimensions of the house and the number of people living there.

In response, counsel submitted an affidavit addressing Petitioner's assertions of ineffective assistance. (ECF No. 16-2). The following is an excerpt from Mr. McCrae's affidavit:

> I talked extensively with [Petitioner] regarding potential witnesses in his defense. [Petitioner] gave the names of some individuals who were living with him and the complainant and the complainant's mother at different points in time, along with some family members. The crux of their proposed testimony was that many other people were living at the Pasa Hondo address when the alleged sexual assault happened. The problem with this information was there never was a specific date given by the complainant or the complainant's mother as to when the sexual penetration occurred at Pasa Hondo.
>
> The dates and times of the offenses were very loosely described by the temperature outside at the time or if the complainant was in school or not. Under these circumstances, the probative value of testimony from a person living in the home in the general time frame the offenses occurred carried little weight because these persons would not be in a position to say with any specificity when the alleged offenses happened or did not. These same persons were not able to be located by our investigators based on the information provided by [Petitioner] and his family.
>
> [Petitioner] hoped to show through this proposed testimony that given the dimensions of the Pasa Hondo home the alleged abuse could not have happened. Investigator Ed Povlish spoke to [Petitioner]'s sister, Tia Dotson, who claimed to live at the Pasa Hondo address while [Petitioner] and the complainant and the complainant's mother lived there also. Ms. Dotson, as a disabled person, did not work and was home "all the time" and stated the dimensions of the Pasa Hondo home would not have allowed for the sexual assault to go unnoticed. (*See Ed Povlish Report attached to this affidavit*). The issue with Ms. Dotson's testimony was that she was told of the alleged abuse by [Petitioner] in 2015 by the complainant's mother but never reported the same to law enforcement or anyone else.
>
> Even still, the complainant's mother, the state's most dynamic witness, testified during trial that while at the Pasa Hondo address it would have been very difficult for [Petitioner] to have committed the acts in question because there were no doors and people were always coming and going from the home. She was consistent on this point and having that testimony come from her carried more weight than from anyone else.
>
> Defense Counsel was able to negotiate the admission of a Child Protective Services (hereinafter "CPS") report that outlined dates and times of when the child was screened for abuse while living at Pasa Hondo. In this CPS report there were no findings of abuse by [Petitioner], in fact he was ruled as having any

> negative impact on the child's life while living at the Pasa Hondo address. [Petitioner] had testimony, and corroborating evidence that while living at the Pasa Hondo address he did not abuse the complainant. To undermine this evidence by calling defense witnesses who, as sympathetic friends and family, could not rule out abuse with any reasonable degree of specificity would have been a poor strategy.

*Id*. at 62-64.

The state habeas trial court found trial counsel's affidavit to be credible and concluded that Petitioner failed to prove that counsel was ineffective under the *Strickland* standard. (ECF No. 16-2 at 56). These findings and conclusions were adopted by the Texas Court of Criminal Appeals when it denied Petitioner's state habeas application. (ECF No. 14-25). These determinations, including the trial court's credibility findings, are entitled to a presumption of correctness unless they lack fair support in the record. *Demosthenes v. Baal*, 495 U.S. 731, 735 (1990); *Miller v. Thaler*, 714 F.3d 897, 903 (5th Cir. 2013).

Petitioner fails to show that the state court's ruling on trial counsel's investigation and strategy was contrary to, or involved an unreasonable application of *Strickland* or that it was an unreasonable determination of the facts based on the evidence in the record. *Strickland* requires counsel to undertake a reasonable investigation. 466 U.S. at 690-91; *Charles v. Stephens*, 736 F.3d 380, 389 (5th Cir. 2013). Counsel must, at minimum, interview potential witnesses and make an independent investigation of the facts and circumstances of the case. *Kately v. Cain*, 704 F.3d 356, 361 (5th Cir. 2013). But in assessing the reasonableness of counsel's investigation, a heavy measure of deference is applied to counsel's judgments and is weighed in light of the defendant's own statements and actions. *Strickland*, 466 U.S. at 691. This wide latitude given to trial counsel includes the discretion to determine how best to utilize limited investigative resources available. *Richter*, 562 U.S. at 107 ("Counsel was entitled to formulate a

strategy that was reasonable at the time and to balance limited resources in accord with effective trial tactics and strategies.").

In this case, trial counsel's affidavit—adopted by the state habeas court and ultimately by the Texas Court of Criminal Appeals—explained that counsel was unable to locate most of the individuals mentioned by Petitioner. Although counsel did speak with Petitioner's sister, counsel explained that her testimony would be problematic because she was informed of the alleged abuse as early as 2015 but did nothing about it. Counsel also explained that any testimony from these witnesses would have been a poor strategy because the witnesses could not rule out, with any reasonable degree of specificity, that the abuse did not occur, and would have undermined strong evidence from the victim's mother and the CPS report that he did not abuse the victim at that address.

Petitioner has not pointed to any evidence rebutting counsel's assertions, much less demonstrated that the state court's ruling on trial counsel's investigation and strategy "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103. Consequently, viewing these allegations under the deferential standard that applies on federal habeas review, Petitioner has not shown that the state court's decision was objectively unreasonable or that he is entitled to relief on his IATC claim. Federal habeas corpus relief is therefore denied.

### IV.  Certificate of Appealability

The Court must now determine whether to issue a certificate of appealability (COA). *See* Rule 11(a) of the Rules Governing § 2254 Proceedings; *Miller–El v. Cockrell,* 537 U.S. 322, 335-36 (2003) (citing 28 U.S.C. § 2253(c)(1)). A COA may issue only if a petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). If a district

court rejects a petitioner's constitutional claims on the merits, the petitioner must demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000). This requires a petitioner to show "that reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller–El*, 537 U.S. at 336 (citation omitted).

A district court may deny a COA *sua sponte* without requiring further briefing or argument. *See Alexander v. Johnson,* 211 F.3d 895, 898 (5th Cir. 2000). For the reasons set forth above, the Court concludes that jurists of reason would not debate the conclusion that Petitioner was not entitled to federal habeas relief. As such, a COA will not issue.

## V.  Conclusion and Order

Petitioner has failed to establish that the state court's rejection of the aforementioned claims on the merits during his direct appeal and state habeas corpus proceedings was either (1) contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or (2) based on an unreasonable determination of the facts in light of the evidence presented in the petitioner's state trial, appellate, and habeas corpus proceedings. As a result, Petitioner's federal habeas corpus petition does not warrant federal habeas corpus relief.

Accordingly, based on the foregoing reasons, **IT IS HEREBY ORDERED** that:

1. Federal habeas corpus relief is **DENIED** and Petitioner James Artie Shaw's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (ECF No. 1) is **DISMISSED WITH PREJUDICE**;

2. No Certificate of Appealability shall issue in this case; and

3.  All remaining motions, if any, are **DENIED**, and this case is now **CLOSED**.

**SIGNED** this the ___29th___ day of October, 2021.

                                            **ORLANDO L. GARCIA**
                                         **Chief United States District Judge**